666 P.2d 1139

**STATE of Idaho, Plaintiff-Appellant,**

v.

**William Leslie CULBERTSON,
Defendant-Respondent.**

**No. 14754.**

Supreme Court of Idaho.

July 13, 1983.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-appellant.

G. LaMarr Kofoed, Fruitland, for defendant-respondent.

SHEPARD, Justice.

This is an appeal by the State from an order of the district court suppressing evidence of a confession by defendant Culbertson on the basis that the State failed to prove defendant's waiver of his right not to incriminate himself and defendant's waiver of his right to have an attorney present.

We reverse and remand for an additional hearing and findings of fact.

Culbertson was incarcerated in the Payette County Jail following an assault conviction and was allowed to participate in a work release program. On the morning of December 16, 1981, at 6:30 a.m., he left the jail in an attempt to find work. At some time between 6:30 a.m. and 8:30 a.m. of that morning, Fred Gamble was killed and his house set afire. According to Culbertson's confession, he visited Gamble at his home, became angry with Gamble for remarks made about Culbertson's wife, clubbed Gamble with a pipe, stabbed him, took his money, set fire to the house, went to Ontario for a cup of coffee, returned to Gamble's house and was seen by the police.

When the police arrived at the Gamble house at approximately 8:30 a.m., Lieutenant Cordes recognized Culbertson and, knowing him to be away from his scheduled work release program, promptly revoked his work release and had him transported back to jail. The testimony of the officer is unwavering that Culbertson was not placed under arrest for anything relating to the death or fire. When asked if he was placed under arrest, Culbertson indicated, "I'm not sure if I was or not. They didn't say I was under arrest or nothing." Later that morning, Cordes went to the Payette County Jail and, together with police chief Moyer, questioned Culbertson. Both officers testified univocally that the *Miranda* rights were read to Culbertson from a card carried by Moyer, which was introduced as an exhibit at the hearing. Culbertson was not asked to nor did he sign the card carried by Moyer from which the *Miranda* rights were read. When questioned thereon, Moyer merely in-

dicated he routinely did not request such signature. Culbertson testified equivocally as to having been read his *Miranda* rights and, on cross-examination, indicated that he did not remember if he had been advised of his *Miranda* rights and that he "may have" been told he had a right to counsel. We emphasize that the trial court made no finding as to whether Culbertson was orally advised of his *Miranda* rights. However, the written confession signed by Culbertson stated that he had been advised of his rights.

The police officers testified unequivocally that during one point in the interrogation, Culbertson made a statement which they believed might be a request for an attorney.[1] The trial court made no finding as to whether Culbertson indeed made a request for an attorney, and if such request was made, whether Culbertson subsequently reinitiated communications with the officers.

Following the hearing on defendant Culbertson's motion to suppress the confession, the trial court granted that motion, indicating that there was conflict regarding the giving of the *Miranda* warnings, whether those warnings were understood, whether the defendant voluntarily resumed the conversation, and whether the confession was otherwise voluntary, and that the court could find "no basis to resolve this conflict." The trial court opined that, although there was no lack of credibility on the part of the officers, their testimony alone could not satisfy the great burden of proof placed on the State.

■ We hold that the suppression of the statements in issue is governed primarily by

---

1. "Q. At any point in the proceeding, did he request an attorney?
"A. Yes, sir. At one point during the proceedings when he made a statement to the effect that 'maybe I did do it. Is it possible that I could do it without knowing it' and I said 'yes, it is, but not very likely.' And he said, 'maybe I need an attorney.' And I said, 'fine.' I said 'Leroy, let's take him back and contact his attorney.'
"Q. Okay, by meaning 'take him back,' where were you referring to?

"A. Take him back to his cell. And at that time he said, 'no, no, no.' He says, 'I don't want one.' He says, 'I want to stay here and talk.'
"Q. And at that time did the discussions pertaining to the matter continue?
"A. Yes, sir, it did.
"Q. And did the defendant make any further request for an attorney?
"A. Absolutely none.
"Q. And did he make any requests that the questioning cease?
"A. No, sir, he did not."

*Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The Supreme Court there stated that when the accused has specifically invoked his right to counsel, he is not subject to further interrogation until counsel has been made available to him, unless he initiates further communication, exchanges or conversations with the police. It is clear that the burden rests upon the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336 (1983); *State v. Padilla,* 101 Idaho 713, 620 P.2d 286 (1980).

In *Wyrick v. Fields,* —— U.S. ——, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982), it was emphasized that *Edwards* does not state a per se rule but that the totality of the circumstances is controlling. *See State v. Calegar,* 104 Idaho 526, 661 P.2d 311 (1983); *State v. Monroe,* 103 Idaho 129, 645 P.2d 363 (1982). This Court, however, has not specifically defined the standard, *i.e.,* by a preponderance of the evidence or beyond a reasonable doubt, to be used in determining if an accused has waived the rights enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972), the Court stated, "the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." The Court continued:

> "the exclusionary rules are very much aimed at deterring lawless conduct by police and prosecution and it is very doubtful that escalating the prosecution's burden of proof in Fourth and Fifth Amendment suppression hearings would be sufficiently productive in this respect to outweigh the public interest in placing probative evidence before juries for the purpose of arriving at truthful decisions about guilt or innocence."

In those other jurisdictions which have considered the matter, a majority have held that the facts in a suppression hearing may be established by a preponderance of the evidence. *State v. Johnson,* 304 N.C. 680, 285 S.E.2d 792 (N.C.1982). *See, e.g., United States v. Tingle,* 658 F.2d 1332 (9th Cir. 1981); *United States v. Phillips,* 640 F.2d 87 (7th Cir.1981), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981); *United States v. Dodier,* 630 F.2d 232 (4th Cir. 1980); *Martinez v. Estelle,* 612 F.2d 173 (5th Cir.1980); *United States v. Little Bear,* 583 F.2d 411 (8th Cir.1978).

We agree with the policy reasons enunciated in *Lego,* and hold that the State's burden of proof that there was a voluntary, knowing and intelligent waiver of *Miranda* rights is to be established by a preponderance of the evidence. Further, once an accused expresses a desire for counsel, he is not subject to further interrogation unless he initiates further communication, exchanges or conversations with the police. Proof that the defendant reinitiated communication must be established by the State by a preponderance of the evidence.

Respondent Culbertson also asserts that the instant appeal should have been dismissed since the Payette County prosecutor, without joining the Idaho Attorney General, filed a notice of appeal from the order suppressing the evidence. *State v. Biggs,* 101 Idaho 201, 610 P.2d 560 (1980); *State v. Ott,* 100 Idaho 795, 605 P.2d 973 (1980). In the instant case, however, the Attorney General of the State of Idaho has joined and acknowledged the notice of appeal and has briefed and argued the cause. We find no error.

In accordance with the foregoing, we reverse the cause and remand it for further proceedings. Since the district judge who ordered the suppression of the evidence is now retired, we direct that a new hearing be held and that testimony be taken regarding the facts and circumstances surrounding the events leading up to the defendant's execution of the purported confessions. Following such hearing, we direct the entry of specific findings of fact determining those facts and circumstances, specifically: whether defendant Culbertson was advised of his *Miranda* rights, whether

defendant Culbertson asserted his right to counsel, and if such right to counsel was asserted, whether the defendant thereafter initiated further communication, exchanges or conversations with the police officers. From those findings, the district court is directed to conclude whether any waiver of rights or privileges was made voluntarily, knowingly and intelligently.

Although counsel for respondent failed to raise below or on appeal, in brief or oral argument, the possible ramifications of I.C. § 19–853, the court *sua sponte* has considered the possible application of said statute to the instant facts and circumstances. By the enactment of I.C. § 19–853, the Idaho legislature has codified the requirements laid down by the United States Supreme Court in *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, our legislature, in the enactment of the statute, has gone beyond the United States constitutional requirements enunciated in *Miranda* and has required that a person accused or detained be given such *Miranda* warnings in writing and that the receipt of the warning should be acknowledged. Here the *Miranda* warnings were not given to the defendant Culbertson in writing, although the opportunity to deliver the written warnings was clearly available to the officers. Insofar as the written acknowledgment of the receipt of such rights is concerned, the confession recites that the warnings were received and the signature of Culbertson is attached to that confession. It was held in *State v. Powers,* 96 Idaho 833, 537 P.2d 1369 (1976), *cert. denied,* 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976), that for the purpose of I.C. § 19–853, a person was not "detained by a law enforcement officer" when he was already incar-cerated on a separate offense, and that under such circumstances a person is "detained by a law enforcement officer" only when the criminal investigation has focused on the person being interrogated and in effect the person being interrogated has become an accused. Hence, upon remand, the district court shall determine whether the investigation had "focused" on Culbertson at the time of the interrogation and thus whether I.C. § 19–853 requires in the instant case that, for the *Miranda* warnings to become effective, there be compliance with the requirements of the statute regarding the warnings being furnished in writing, acknowledgment by the accused, and a filing thereof.[2]

The order of the district court suppressing the evidence is reversed and the cause is remanded for further proceedings consistent with this opinion.

BAKES and HUNTLEY, JJ., and McFADDEN, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

The majority reverses the decision of the trial court and remands the case for "the entry of specific findings of fact determining [the facts and circumstances surrounding the events leading up to the defendant's execution of the purported confessions]." The Court states that "[f]rom those findings, the district court is directed to conclude whether any waiver of rights or privileges was made voluntarily, knowingly and intelligently." The Court cites no authority for its actions and indeed it cannot, since its disposition of this matter is wholly unprecedented. This Court has never heretofore required such specific findings of fact and circumstances; an opinion by the trial court

---

2. Although opportunity was furnished therefor, neither party has provided the court with authority relative to the effect of a possible violation of I.C. § 19–853. Although there have been continued criticisms from both within and without the United States Supreme Court of the continued application of the exclusionary rule to evidence secured without compliance with the rights enunciated in *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at the present time at least, we deem it clear that the exclusionary rule continues to be applicable in circumstances of non-compliance with the standards of *Miranda*. Those *Miranda* rights are, of course, afforded under the aegis of the United States Constitution; it does not necessarily follow that non-compliance with the standards afforded by a statute such as I.C. § 19–853 requires the application of the exclusionary rule to evidence secured without conformance with such statute.

setting forth the reasons for its decision has always been considered sufficient for purposes of appeal. *See State v. Monroe,* 101 Idaho 251, 611 P.2d 1036 (1980). The Court appears to be manufacturing a pretext for reversal so that the issue can be reconsidered—and by a new district judge, the district judge who originally considered this case having retired. Furthermore, the Court makes an issue of the standard to be applied in determining whether there was a voluntary and intelligent waiver of *Miranda* rights, holding that such a waiver must "be established by a preponderance of the evidence," rather than beyond a reasonable doubt. However, neither party has contended anything more than a preponderance of the evidence was required. The State has not argued that the trial court applied an inappropriate standard, but has merely contended that it established that the confession was voluntary. The trial court found otherwise and I agree.

The trial court in this case unequivocally resolved the issues of waiver of the privilege against self-incrimination and the right to counsel and the issue of the voluntariness of the confession in favor of the defendant. While the court's findings were not separately numbered, they clearly reveal the court's reasoning on these issues and they are certainly sufficient.

"This court cannot find a waiver of defendant's privilege against self-incrimination and right to counsel. The State failed to prove that he was told what he was to be questioned about.

"Where waiver of rights upon the resumption of conversation after he asked for an attorney is concerned, the evidence as to exactly what was said and done at that time is in conflict. The court can find no basis to resolve this conflict. Consequently, the State, which has a heavy burden of proof on this point, must lose. A tape recording of the interrogation or a written waiver at that point most likely would have resolved this conflict.

"The evidence on the remaining issues, that is, whether the *Miranda* warnings were given, whether they were under-stood, and whether the confession was otherwise voluntary, is weak when considered with all the circumstances of the case and with regard to the great burden on the State.

"The court resolves these issues in favor of the defendant. It is not because of a lack of credibility on the part of the officers as compared to the defendant. It is because the law places a great burden of proof on the State which cannot in all cases be satisfied by the testimony of the officers conducting the interrogation alone."

R., p. 48.

A review of the record demonstrates that the trial court's decision was proper, revealing, among other things, that there was no signed waiver of *Miranda* rights (certainly not routine police procedure under the circumstances) and that the confession was written, not by the defendant, but by the chief of police. Furthermore, the majority concedes that the defendant made a statement which the police officers "believed might be a request for an attorney." Since the defendant had requested an attorney, and the trial court found that the state had not met its burden of demonstrating that the defendant initiated further conversations with the police following this request, there is no need for redetermination of the matter. I join with the views expressed just one week ago by the Supreme Court of Arizona:

"The language of *Edwards* [*v. Arizona*] is unequivocal; an accused who has asserted his right to counsel 'is not subject to further interrogation by the authorities until counsel has been made available to him.' 451 U.S. at 485, 101 S.Ct. at 1885. The rule prohibits 'further question.' . . .

"The assertion of the right to counsel is an expression by the accused that he is not competent to deal with the authorities without legal advice. *See Edwards v. Arizona, supra.* The resumption of questioning in the absence of an attorney after an accused has invoked his right to have counsel present during police inter-

rogation strongly suggests to an accused that he has no choice but to answer. Thus, 'a later decision at the authority's insistence to make a statement without counsel's presence may properly be viewed with skepticism.' *Michigan v. Mosely,* 423 U.S. [96] at 111, note 2, 96 S.Ct. [321] at 329 [46 L.Ed.2d 313] (White, J., concurring).

"We therefore hold that, after requesting counsel during the initial interrogation, the appellant should not have been subjected three days later to interrogation which he had not initiated without counsel having been made available to him."

*Arizona v. Routhier,* 137 Ariz. 90, 669 P.2d 68 (Ariz.Sup.Ct.1983) (No. 5390, filed July 6, 1983). (Footnote omitted.). *See State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336, 1345–52 (1982) (Bistline, J., dissenting).

As a final note I must add that it is well to see that the Court has finally given recognition to the statutes enacted by the Idaho legislature in response to the United States Supreme Court's opinion in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), statutes about which I have written on several occasions. *See, e.g., State v. Calegar,* 104 Idaho 526, 661 P.2d 311 (1983) (Bistline, J., dissenting); *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336 (1983) (Bistline, J., dissenting). However, I believe that it borders on the absurd to suggest that there is any need for a determination on remand "whether the investigation had 'focused' on Culbertson." Although Culbertson may have been in custody for other reasons, the record demonstrates that the investigation in this case most certainly had focused on him. Clearly, even the police officers who questioned Culbertson thought this to be the case, or there would have been no reason for them to give him the *Miranda* warnings which, as the Court acknowledges, both officers testified were orally given. I.C. § 19–854 clearly provides that information contained in the warnings to be given a defendant is effective only if it is "in writing or otherwise recorded" or if the person to whom the

information is given "records his acknowledgment of receipt and time of receipt." The statute is there and it should be followed. It clearly was not followed in this case.