675 P.2d 351

STATE of Idaho, Plaintiff-Respondent,

v.

Kenneth HUSKEY, Defendant-Appellant.

No. 14473.

Court of Appeals of Idaho.

Jan. 10, 1984.

Robert Fallowfield, Luboviski, Wygle & Fallowfield, Ketchum, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Neil Tillquist, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

A jury found Kenneth Huskey guilty of five counts of embezzlement. On appeal, his sole claim of error concerns the district court's denial of a motion to suppress evidence obtained during a search.[1] The issue is whether the search was within the scope of a search warrant, or—in any event—whether the search was justified under an exception to the warrant requirement. Because we hold the search valid under the consent exception, the judgment of conviction is affirmed.

This case focuses upon the second of two searches conducted after Huskey had been arrested on the embezzlement charges. These charges were based upon allegations that Huskey fraudulently had misappropriated money or property received from persons doing business with his auto body repair shop in Ketchum, Idaho. Huskey asked the friend to pick up the automobile in Jackpot, Nevada, where Huskey had been apprehended, and drive it back to Ketchum. The friend contacted the police and, upon obtaining their approval, brought the automobile to Ketchum. There the police, pursuant to a warrant, searched the vehicle and seized numerous business documents. The vehicle then was released to the friend. The validity of that search is not contested here.

A preliminary hearing followed, and Huskey was bound over to district court. During the hearing, a criminal investigator understood Huskey's friend to say that the Wagoneer contained other items belonging to Huskey and that the friend had them at his residence. The investigator then sought and obtained a second warrant to search for those belongings at the friend's address. The investigator later saw the friend in downtown Ketchum and told him about the warrant. The friend voluntarily accompanied the investigator to the residence, where the warrant was served. The

---

1. Despite the narrowness of the error claimed on appeal, we note that the record contains 188 pages of voir dire examination of prospective jurors. This transcript evidently was prepared at public expense. The voir dire presumably was included by specific request under I.A.R. 25(a)(1). However, the voir dire has no bearing on the issue presented to us. We reiterate our recent observation in *State v. Palin*, 105 Idaho 70, 675 P.2d 49 (1983), that appellate records should be tailored to the issues.

investigator explained that he was there to collect Huskey's belongings. The friend responded that some of the items were on the porch and others were still in the automobile, which was parked in the front yard. The friend said there was no need to search the residence. The friend later testified at a suppression hearing that he had shown the investigator where the objects of the search were located and had "thanked" him "for getting them out of there." The friend further acknowledged that he had said to the investigator, "Here, take it, please; get it off my hands.... Good; now I am rid of this; I can sell this Wagoneer."

■ Huskey argues that the second search was unconstitutional because the automobile was not mentioned in the warrant. The fourth amendment to the United States Constitution and art. I, § 17 of the Idaho Constitution both prohibit unreasonable searches. They employ nearly identical language.[2] A warrantless search, or a search beyond the authority conferred by a warrant, is presumed to be unreasonable. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted).

In this case the State argues that the warrant should be interpreted to include the automobile. However, we need not address that contention because the search would be deemed permissible, in any event, if conducted under a recognized exception to the warrant requirement. Here the State has urged two exceptions—consent to the search, and exigent circumstances for the search. We focus solely upon the question of consent.

■ A warrantless search may be conducted with consent of a third party who shares control of the premises or of the items to be searched. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). "[W]here two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either." *United States v. Sferas*, 210 F.2d 69, 74 (7th Cir.), *cert. denied*, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954). *See also United States v. Stone*, 471 F.2d 170 (7th Cir.1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1898, 36 L.Ed.2d 391 (1973).

■ As noted, Huskey's friend was a co-owner of the Wagoneer. At the suppression hearing, the court specifically questioned the friend regarding the extent of his control over the vehicle. When asked if there was any restriction on his use of the vehicle, the friend stated "No. None that I know of, no. We had an equal partnership." The district court then ruled that the friend "had the right to grant permission to take the property out of the car." We agree.

Huskey further argues that his friend's consent was not given voluntarily and freely. This argument is grounded entirely upon the following colloquies during the suppression hearing:

Q. [by public defender] Now, did you resist [the investigator's] attempt to execute that search warrant?

A. [by friend] Oh, no, no.

Q. Why not?

A. It was a search warrant. I wouldn't think of resisting a search warrant. Never thought of it.

. . . .

Q. [by prosecutor] It's true ... is it not, that if [the investigator] hadn't showed [sic] you any warrant at all and he wanted Mr. Huskey's stuff, you would have been glad to get rid of it?

---

**2.** Because the two constitutional provisions are so nearly the same, and because we find no constitutional violation, we need not invoke any independent state grounds for our decision in this case.

A. Actually not. This is such a legal conflagration. I would not have released it, you know, without proper, without checking with you, without checking with [the public defender] or something, yes.

These colloquies were supplemented by the following dialogue:

Q. [by prosecutor] But you weren't coerced by [the investigator]?

A. No, I was not coerced.

Q. Was your consent freely given?

A. It was.

Q. It was voluntarily given?

A. Yes.

Q. Let's face it; you are relieved to have that stuff off your hands?

A. Certainly.

■■■ Whether a person's consent to search is voluntary must be determined from the "totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *see also State v. Christofferson*, 101 Idaho 156, 610 P.2d 515 (1980). The State has a heavy burden to prove that the consent was given freely and voluntarily. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Mere acquiescence to a warrant does not constitute consent. As the Supreme Court noted in *Bumper:*

> When a law enforcement officer claims authority ... under a warrant, he announces in effect that the [consenter] has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent. [*Id.* at 549, 88 S.Ct. at 1792.]

However, the facts of this case do not fall within the admonition of *Bumper.* There is no assertion here that the investigator actually made a claim of authority to search the Wagoneer under the warrant. Indeed, it is uncontroverted that the investigator obtained the warrant to search the residence, and his attention was redirected toward the Wagoneer only when the friend voluntarily informed him that he could find what he sought on the porch and in the car. Moreover, the friend's subsequent testimony at the suppression hearing did not establish that he would have withheld consent to search the car absent a warrant. His testimony demonstrated only that he would not have "released" the property to someone without a warrant unless he first checked with the prosecutor or public defender. Finally, the friend's testimony and conduct must be examined as a whole. The friend followed a consistent course of assisting the police in their investigation. He obtained police approval before he picked up the car in Nevada. He left those items in the car which were not seized in the first search. He accompanied the investigator to his home for the second search and told him where to look. He asked the investigator to take Huskey's property from the car, and thanked him for doing so. He unequivocally said he had consented to the second search freely and voluntarily, acknowledging that he was relieved to have Huskey's property removed from the car.

■■■ In view of all the circumstances, we hold that the friend's consent to the second search of the Wagoneer was voluntarily given. We conclude that the search was constitutionally permissible. The district court did not err by refusing to suppress the evidence obtained during that search. The judgment of conviction is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.