716 P.2d 1328

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Kathy RUSHO and Roger Rusho, Defendants-Appellants.**

Nos. 15828, 15829.

Court of Appeals of Idaho.

March 12, 1986.

Dan J. Rude, Coeur d'Alene, for defendants-appellants.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen. and Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

### SUBSTITUTE OPINION

The Court's prior opinion, dated January 3, 1986, is hereby withdrawn.

BURNETT, Judge.

If someone calls the police and reports an intruder in your home, may the police enter the house and search it without a warrant and without your consent? That is the question posed by this appeal.

The issue is framed by an ironic set of facts. One afternoon Kathy Rusho, a young mother of two children, sensed that an intruder was in her home. She ran to a house across the street and asked for help. One of the neighbors called the police while another walked through the Rusho home, observing nothing unusual. Mrs. Rusho returned home briefly, encountered no intruder, and walked back outside. Moments

later a police officer arrived. He chatted momentarily with the neighbor and entered the house without talking to Mrs. Rusho. He found nothing. While he was still inside, a second officer arrived and began to enter the house. Mrs. Rusho ran to the porch where, according to her subsequent testimony, she told the second officer, "Just forget it, there is nobody in there, just forget it." This testimony was corroborated by a neighbor who overheard the remark. However, the second officer's recollection was different. He acknowledged that Mrs. Rusho had spoken to him but he testified that "[s]he stated ... there was someone inside, a man she didn't know, and she wanted him removed." [1] In any event, the second officer proceeded into the house, directing Mrs. Rusho to stay outside. He and the first officer conferred and then searched the entire house together. No intruder ever materialized. Instead, the officers found marijuana plants growing in the basement.

Mrs. Rusho and her husband, Roger Rusho, were charged with "manufacturing" marijuana, a violation of I.C. § 37–2732. After moving unsuccessfully to suppress the evidence, the Rushos entered conditional pleas of guilty under I.C.R. 11(a)(2). These consolidated appeals followed.[2]

■ The fourth amendment to the United States Constitution balances the intrusive power of the government against the right of all people to maintain the privacy of their homes. It prohibits "unreasonable searches and seizures" and it provides that warrants shall issue only upon probable cause. A search without a warrant is deemed "unreasonable" per se unless the government shows that the search comes within one of several judicially recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Cook,* 106 Idaho 209, 677 P.2d 522 (Ct. App.1984). Among the recognized exceptions are consent and exigent circumstances. The district court relied upon both grounds to uphold the warrantless search in this case. On appeal the state also has urged application of the "plain view" doctrine. We will consider the state's argument first.

■ "Plain view" is not so much an exception to the warrant requirement as it is an exclusion from the fourth amendment itself. The doctrine, simply stated, is that if a police officer is where he has a right to be, and he sees something in plain view, the observation is not a search and the ensuing seizure ordinarily is not subject to fourth amendment strictures. The doctrine embodies three elements. First, it must be immediately apparent to the officer that the item seized is connected with criminal activity. Second, the officer must have possessed no prior knowledge that the object would be found where he observed it. Finally, the officer legitimately must have been at the location where he made the observation. *Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983); *State v. Holman,* 109 Idaho 382, 707 P.2d 493 (Ct.App.1985).

■ The first two requirements clearly are satisfied in this case. The marijuana was contraband on sight and the police officers came upon it by surprise. However, the last requirement is problematic. Absent consent or exigent circumstances, which we will consider in a moment, we cannot posit a legitimate basis for police officers to be in the basement of the Rusho

---

1. In ruling on the suppression motions, the district court stated that the second officer did not know who Mrs. Rusho was when she spoke to him. The statement is incorrect. The officer testified at the preliminary hearing that Mrs. Rusho identified herself to him by saying, "I live here."

2. The district court withheld judgment in each case. Consequently, the appeals have been taken solely from the orders on motions to suppress, not from any judgments of conviction.

house without a warrant. The state, upon vaguely defined grounds of public policy, urges us to declare that the police have a "duty" to enter homes whenever something seems amiss. However, our Constitution is the ultimate expression of public policy. It envisions no such pervasive "duty" and we decline to create one in this case. We conclude that the plain view doctrine is inapposite.

■ We next turn to exigent circumstances. This exception to the warrant requirement is not easily defined. It refers broadly to fact patterns "sufficient to excuse an officer from the requirement of obtaining a warrant to conduct a search for which he has probable cause." 1 W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS, p. 10–1 (1985). Probable cause and a compelling emergency, such as imminent destruction of evidence or immediate danger to persons or property, must be shown. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The warrantless search may not go beyond the need created by the exigency. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Here, as noted, the district judge ruled that the search was justified by exigent circumstances. The state now urges us to review this ruling under the deferential standard of clear error commonly applied to determinations of fact. Indeed, we have held that a judge's factual findings on a motion to suppress will not be disturbed unless they are clearly erroneous. *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). However, the same degree of deference does not necessarily apply to a trial court's determination that the facts found demonstrate compliance with constitutional requirements for a valid warrantless search. Such a determination may be viewed as a matter of law, freely reviewable on appeal. *E.g., People v. Leyba,* 29 Cal.3d 591, 174 Cal.Rptr. 867, 629 P.2d 961 (1981). Alternatively, it might be treated as a mixture of law and fact, posing a choice between the law-based standard of free review and the fact-based standard of clear error. *See, e.g., United States v. Dugger,* 603 F.2d 97 (9th Cir.1979) (trial court ruling, that a warrantless search was justified by exigency, held "clearly erroneous").

In *State v. Campbell, supra,* we cited federal cases akin to *Dugger* and said that a "question of exigency" is subject to review under the "clearly erroneous" standard. 104 Idaho at 711, 662 P.2d at 1155. However, the federal version of this standard historically has been less deferential than the Idaho version, which is functionally equivalent to the substantial evidence test applied to fact-finding. *See generally* Burnett, *Standards of Appellate Review,* IDAHO APPELLATE HANDBOOK § 3.3.2 (Idaho Law Foundation, Inc., 1985). Moreover, in *Campbell* we went on to state our independent conclusion, upon the record then before us, that "[t]he officers were justified, by the exigencies of the circumstances and with probable cause, in entering the residence to [conduct a warrantless search]." *Id.* at 714, 662 P.2d at 1158. In other cases, this Court and the Idaho Supreme Court similarly have reached independent conclusions as to whether the constitutional requirements for valid warrantless searches were satisfied upon the facts presented. *E.g., State v. Hobson,* 95 Idaho 920, 523 P.2d 523 (1974); *State v. Haggard,* 89 Idaho 217, 404 P.2d 580 (1965); *State v. Zapp,* 108 Idaho 723, 701 P.2d 671 (Ct.App.1985). Accordingly, we believe that the proper standard of review is one of deference to factual findings unless they are clearly erroneous, but free review of a trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found.

■ In the present case, the district court found that the neighbor's telephone call, informing the police that Mrs. Rusho had fled from her home in fear of an intruder, created an exigency. That finding is uncontested in this appeal. The police responded to the telephone call with commendable promptness. The first officer to arrive was told by one of the neighbors

that the Rusho house already had been checked and that no intruder had been found. However, the officer had not talked to Mrs. Rusho and, so far as he was aware, she still wanted the premises to be thoroughly examined by the police. When the second officer arrived, he spoke to Mrs. Rusho. For the sake of this discussion we will presume, as did the district court, that she told the officer "there is nobody in there, just forget it." By this time, Mrs. Rusho and her children were outside the house, in no immediate danger. The first officer, a neighbor and Mrs. Rusho herself had entered the house without incident. Nevertheless, the district court ruled that an exigency still existed and that it was sufficient to justify a warrantless search of the entire house despite Mrs. Rusho's presumed objection.

We disagree. In our view, the finding that an exigency still existed was clearly erroneous. There was no compelling emergency. Moreover, even though the possibility of an intruder had not been wholly eliminated, we do not believe that such a bare possibility is sufficient to justify a warrantless, nonconsensual search. This is a question of constitutional dimension, weighing the state's interest in public safety against a citizen's right to maintain the privacy of her home. Fourth amendment values would be gravely impaired if the mere report of an intruder became a license for the police to enter a home and to search it without a warrant, over the homeowner's objection. A balance must be struck. We hold that such warrantless and nonconsensual searches are permissible only if there is probable cause to believe that an intruder exists and it reasonably appears that persons or property are in immediate danger. The initial report of an intruder, uncorroborated by other facts, is insufficient to overcome a homeowner's right to say "forget it." In this case we conclude, upon the facts found or presumed by the district court, that probable cause was not established and that any degree of danger remaining when the second officer entered the house was insufficient to justify the subsequent search of the basement by both officers.

We recognize, of course, that if Mrs. Rusho's testimony were disbelieved—if she actually told the second police officer to remove a stranger from her house—then the facts bearing on probable cause and exigency would be profoundly different. But in that event, the dispositive issue in this case also might be different. The outcome could turn on the question of consent.

A valid consent dispels the necessity for a search warrant. Indeed, it has been suggested that consent—like the plain view doctrine—dispels application of the fourth amendment itself. *E.g., Hornblower v. State*, 351 So.2d 716 (Fla.1977). But from either perspective, it is well settled that the state bears the burden of proving that a consent has been given freely and voluntarily. *State v. Huskey*, 106 Idaho 91, 675 P.2d 351 (Ct.App.1984). The existence of consent must be determined from all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Even if consent has been given, expressly or impliedly, it may be revoked, thereby terminating the authority of the police to continue a warrantless search. *U.S. v. Ward*, 576 F.2d 243 (9th Cir.1978); *Herron v. State*, 3 Tenn.Cr. App. 39, 456 S.W.2d 873 (1970), *vacated on other grounds*, 408 U.S. 937, 92 S.Ct. 2865, 33 L.Ed.2d 756 (1972). *See generally* 2 W. LaFAVE, SEARCH AND SEIZURE § 8.1 (1978).

In this case, there is no evidence that Mrs. Rusho expressly consented to a search. She did not tell her neighbors to call the police. However, she may have given implied consent by asking for help under circumstances where it was manifestly prudent for someone to call the police. If so, the question is narrowed to whether she later revoked such consent, by telling the second officer to "forget it," or confirmed the consent by telling him to remove a stranger from her house.

This conflict in the evidence was not resolved by the district judge in ruling on the

suppression motions. He held that both consent and exigent circumstances had been established even if Mrs. Rusho's testimony were believed. For reasons stated in today's opinion, we disagree. The permissibility of the warrantless search, whether predicated upon consent or exigent circumstances, turns upon what Mrs. Rusho actually told the second officer. A finding must be made on this disputed point of fact. Although factual findings are not always required in suppression rulings, they are necessary where, as here, credibility must be assessed and conflicting evidence must be weighed. *See, e.g., Warwick v. Robalewski*, 120 R.I. 119, 385 A.2d 669 (1978). These are tasks for the trial court.

Accordingly, we vacate the order refusing to suppress the evidence in each case. We remand both cases for further consideration in light of this opinion. The Rushos' conditional pleas of guilty shall remain in effect, pending the final outcome of the district court's reconsideration.

WALTERS, C.J., and SWANSTROM, J., concur.